IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEAH RODRIGUEZ,                                         3:12-cv-01553-MA

           Plaintiff,                              OPINION AND ORDER

   v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

           Defendant.

ROBYN M. REBERS
P.O. Box 3530
Wilsonville, Oregon 97070

   Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

CHRISTOPHER J. BRACKETT
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, Washington 98104-7075

   Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Leah Rodriguez, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act. See 42 U.S.C. §§ 401-434, 1381-1383f. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for SSI and DIB on January 14 and 28, 2009, respectively, alleging disability due to depression, bipolar disorder, and posttraumatic stress disorder. Tr. 150. Her applications were denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on March 21, 2011, at which plaintiff was represented by counsel and testified. Vocational Expert (VE) C. Kay Wise was also present throughout the hearing and testified.

On April 22, 2011, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. After the Appeals Council declined review of the ALJ's decision, plaintiff timely filed a complaint in this court.

///

2 - OPINION AND ORDER

## FACTUAL BACKGROUND

Born on November 2, 1969, plaintiff was 39 years old on the alleged onset date of disability, and 41 years old on the date of the hearing. Plaintiff has a high school education and past relevant work in "fast foods work," and as a Mail Clerk, Home Health Aide, and Office Clerk. Tr. 65, 155.

Plaintiff alleges her conditions became disabling on January 1, 2009. In addition to her hearing testimony, plaintiff submitted an Adult Function Report. Tr. 173-80. Plaintiff's mother, Sherry L. Hayhurst, submitted a Third Party Function Report and an additional letter. Tr. 157-64, 216. In addition, Sarah Swenson Smith, plaintiff's former co-worker; Alein McMellon, plaintiff's grandmother; and Cassandra Hayhurst, plaintiff's daughter, submitted letters. Tr. 213-15, 218.

Kay Stradinger, Psy.D., examined plaintiff and submitted an evaluative opinion. Tr. 450-56. Bill Hennings, Ph.D., completed a Mental Residual Functional Capacity Assessment, which was affirmed by Kordell N. Kennemer, Psy.D. Tr. 457-60, 486. Tim Perez, PMHNP, one of plaintiff's treating nurse practitioners, submitted a letter and a Functional Assessment of Work-Related Mental Activities. Tr. 723-25.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v.

3 - OPINION AND ORDER

Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date, January 1, 2009. See 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.; Tr. 14.

At Step Two, the ALJ determined that plaintiff's depressive disorder not otherwise specified (NOS); anxiety disorder NOS; Vicodin and amphetamine dependence in remission; and a personality disorder provisional, cluster B traits are severe impairments. See 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 14-15.

At Step Three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 15-16.

The ALJ found that plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but can only perform unskilled work which the ALJ defined

4 - OPINION AND ORDER

as "routine, repetitive tasks, simple instructions," and can have no close or frequent contact with the general public, co-workers, and supervisors. Tr. 16-19.

At Step Four, the ALJ found that plaintiff is capable of performing her past relevant work as a Mail Clerk. See 20 C.F.R. §§ 404.1565, 416.965; Tr. 19-21.

At Step Five, the ALJ alternatively found that jobs exist in significant numbers in the national economy that plaintiff can perform, including Stock/Material Handler, Merchandise Distribution Handler, and Cleaner. See 20 C.F.R. §§ 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a); Tr. 20-21.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises five issues on appeal. First, plaintiff asserts that the ALJ improperly discredited her testimony. Second, plaintiff argues that the ALJ erroneously discredited the opinion of examining physician, Dr. Stradinger. Third, plaintiff maintains that the ALJ cited insufficient reasons for rejecting the opinion of Tim Perez, PMHNP. Fourth, plaintiff argues that the ALJ erroneously rejected the lay testimony. Finally, plaintiff asserts that the ALJ erred in failing to include a moderate limitation in her concentration, persistence, and pace in the RFC.

///

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I. Plaintiff's Testimony

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80

6 - OPINION AND ORDER

F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. Id. at 1281.

If an ALJ finds that the claimant's testimony regarding her subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, plaintiff testified that she lives with her 19-year-old daughter and 18-year-old son. Tr. 40. Plaintiff reported that she becomes anxious around groups of people and has difficulty accepting criticism. Tr. 41-42. Plaintiff additionally testified that she has difficulty building motivation in the morning and completing shopping trips. Tr. 42. Plaintiff stated that she has been hospitalized for mental health reasons "four or five times," including in 2010 for a suicide attempt. Tr. 43. As

7 - OPINION AND ORDER

to substance abuse issues, plaintiff testified that she had problems with addiction to Vicodin, but that she no longer takes it. Tr. 44. Plaintiff stated that she experiences headaches as a result of jaw tension, but that they are relieved by Oxycodone and laying down in a room with the lights off for five to ten minutes, two to three times per week. Tr. 45-46.

Plaintiff stated that she was fired from her last job in 2010 because she was frequently absent from work on account of her depression. Tr. 46-47. When she stays home, plaintiff testified that she has trouble accomplishing household chores or making dinner. Tr. 47-48. Plaintiff testified that she fails to get dressed two days per week and can go an entire week without bathing because of her depression. Tr. 49. Plaintiff reported that she suffers panic attacks three times per month, and smaller attacks at home twice per week that last between 15 and 20 minutes. Tr. 52-53.

In her Adult Function Report, plaintiff stated that her typical day includes waking up, going to the bathroom, smoking a cigarette, watching television, and going to doctor appointments, if scheduled. Tr. 173. Plaintiff reported that her children take care of themselves and help with cleaning, laundry, and cooking. Tr. 174. Plaintiff stated that she has trouble with sleep at times, and that her depression interferes with many areas of personal care. Tr. 174. Plaintiff reported, however, that she

8 - OPINION AND ORDER

drives a car and can go out alone, although the children help with shopping once per month. Tr. 176. As to social activities, plaintiff stated that she used to be very sociable, but can no longer maintain friendships. Tr. 178.

Plaintiff checked that her conditions affect her abilities to remember, complete tasks, concentrate, understand, and get along with others. Id. Plaintiff wrote that she can only walk half of a block before needing to rest for one minute. Id. Since her conditions began, plaintiff noted that she has had suicidal thoughts more frequently. Tr. 179.

The ALJ rejected plaintiff's testimony because mental health treatment notes do not support finding more limiting symptoms, plaintiff made inconsistent statements regarding her prescription drug use and demonstrated drug-seeking behavior, and other record evidence was inconsistent with plaintiff's testimony. Tr. 17. I conclude that these reasons, taken together, constitute clear and convincing reasons for rejecting plaintiff's testimony.

The ALJ reasonably cited the lack of support for plaintiff's alleged limitations in mental health records as a reason to discredit her testimony. Indeed, in a January 9, 2009 mental health assessment, plaintiff reported no difficulty in her capacity for self-care or activities of daily living. Tr. 334. While plaintiff reported significant anxiety and depressed mood at a handful of early 2009 appointments, plaintiff thereafter

9 - OPINION AND ORDER

consistently reported much lesser levels of depression and anxiety. Compare Tr. 338, 340, 342, with 482-84, 602, 604-07, 726-27. The ALJ also reasonably noted that plaintiff routinely presented in her mental health treatment records as pleasant, cooperative, and easily engaged, and demonstrated good concentration and attention. See Tr. 329-44, 480-84, 602-10, 726-27. Moreover, the ALJ was correct to point out that, contrary to plaintiff's testimony, there is only one passing mention in her mental health treatment notes of anxiety or discomfort around groups of people. See id.; Tr. 726. The ALJ reasonably discredited plaintiff's testimony because the extent of her allegations were unsupported by her mental health treatment records.

The ALJ's rejection of plaintiff's testimony because she demonstrated drug-seeking behavior and made inconsistent statements concerning the use of narcotic pain medication is amply supported by the record. An ALJ may discredit a claimant's testimony because the claimant demonstrated drug-seeking behavior. See Edlund, 253 F.3d at 1157. There are numerous instances in the record of plaintiff mismanaging her narcotic pain medication. For example, in August of 2008, plaintiff made inconsistent statements about using different pharmacies to obtain her narcotic pain medication. Tr. 283. Plaintiff sought early refills of narcotic pain medication on more than a dozen occasions. Tr. 285, 286, 287, 290, 293, 297, 298, 300, 303, 306, 307, 308, 309, 312. By March of

10 - OPINION AND ORDER

2009, plaintiff was under a "letter of advisory" requesting that physicians in the emergency department not prescribe narcotics. Tr. 397. Nonetheless, she continued to seek narcotic pain medication in the emergency department despite physicians' repeated refusal to prescribe them. E.g., Tr. 525, 549.

Additionally, plaintiff was "fired" from Dr. White's care for "abusing Vicodin and a pain contract." Tr. 495. Similarly, Emily Fitz, PAC, refused to prescribe further narcotic pain medication after plaintiff tried to fill a prescription of Vicodin twice. Id. On March 4, 2009, plaintiff falsely told an emergency room physician that she had not taken any Oxycodone despite testing positive for it on a drug screening. Tr. 387. Less than two weeks later, plaintiff overdosed on Seroquel reportedly because "her doctor took her off Vicodin." Tr. 397. In November of 2010, plaintiff convinced Harvey B. Price, M.D., to put her on Oxycodone, but shortly thereafter "violated the trust involved in a pain management situation by accepting a refill too early without saying something to [Dr. Price], also by taking double the dose prescribed, and by getting pain [medication] from another physician without telling [Dr. Price]." Tr. 635. Dr. Price accordingly refused to prescribe any further narcotic pain medication. Tr. 629, 635-36. The ALJ's citation of plaintiff's inconsistent statements regarding narcotic pain medication use and demonstration

11 - OPINION AND ORDER

of drug-seeking behavior is amply supported by the record, and is a compelling reason to reject her subjective testimony.

Finally, the ALJ reasonably cited other inconsistencies in the record as a reason to reject plaintiff's testimony. As the ALJ noted, there are several instances in the record of plaintiff claiming to seek employment after the alleged onset date of disability. Plaintiff repeatedly told her mental health practitioners in 2009 and 2010 that she was looking for a job. Tr. 482, 484, 605, 606. Indeed, on May 21, 2010, plaintiff reported that she had found a job, which "helped her mood tremendously." Tr. 604. The ALJ reasonably found that plaintiff looking for work during the period in which she was alleging she could not work impeached her testimony of disabling limitations. In sum, I conclude that the above reasons, taken together, are clear and convincing reasons for rejecting plaintiff's testimony.

## II. Dr. Stradinger's Opinion

Plaintiff next argues that the ALJ erred in partially rejecting Dr. Stradinger's opinion. The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. Id.

"'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)). "'Where . . . the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'" Id. (quoting Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)). The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Ultimately, the RFC is sufficient if it is "consistent with restrictions identified in the medical testimony." Id.

After an examination, Dr. Stradinger opined that plaintiff "appears to be capable cognitively of performing simple and repetitive work-type tasks," would "likely have some difficulties dealing with people on the job including supervisors, coworkers, and the public," and would "likely have a difficult time attending work on a daily basis and completing a workweek, given her variable mood and substance use." Tr. 456. The ALJ incorporated the social and simple-work limitations into the RFC by limiting plaintiff to unskilled work and no close or frequent contact with the general public, coworkers, and supervisors. Tr. 16, 18. The ALJ rejected Dr. Stradinger's attendance limitation, however, because it was

13 - OPINION AND ORDER

based in part on plaintiff's substance abuse, and plaintiff was no longer using Vicodin, the substance she was primarily addicted to. Because Dr. Stradinger's opinion in this respect was contradicted by Dr. Hennings', the ALJ was required to cite specific and legitimate reasons for rejecting Dr. Stradinger's opined limitation. See Lester, 81 F.3d at 830-31. I conclude the ALJ did so.

The ALJ's finding that plaintiff was no longer abusing narcotic pain medication at the time of the ALJ's decision in April of 2011 is supported by substantial evidence. Indeed, at the hearing, plaintiff testified that she had been taken off Vicodin and put on Oxycodone, which she stated she did not abuse. Tr. 44. Moreover, after Dr. Price refused to prescribe any more narcotic pain medications on December 6, 2010, there are no additional records of plaintiff being prescribed or seeking narcotic pain medication. Thus, the ALJ reasonably found that the rationale for Dr. Stradinger's attendance limitation had diminished between the time of the examination and the date of the ALJ decision because plaintiff's substance abuse had improved. The ALJ permissibly weighed Dr. Stradinger's opinion.

### III. Mr. Perez's Opinion

Plaintiff next asserts that the ALJ erroneously rejected the opinion of Tim Perez, one of plaintiff's treating psychiatric mental health nurse practitioners. As a nurse practitioner, Mr.

14 - OPINION AND ORDER

Perez is an "other source" whose opinion may only be rejected if the ALJ cites reasons germane to the witness. See 20 C.F.R. § 404.1513(d); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). I conclude the ALJ did so.

Mr. Perez opined that it would be difficult for plaintiff to manage the triggers for her depression and posttraumatic stress disorder in the workplace, and that her coping skills "may be maladaptive and at times socially unacceptable although this clinician has not seen evidence of inappropriate behavior." Tr. 723. As such, Mr. Perez opined that "this may render [plaintiff] with impaired ability to perform tasks and compromise her reliability." Tr. 723. Mr. Perez also included a Functional Assessment of Work-Related Mental Activities in which he checked a number of moderate and moderately severe limitations in plaintiff's abilities to, among others, maintain attention and concentration, maintain regular attendance, work in coordination or proximity to others, and complete a normal work day without interruptions from psychologically based symptoms. Tr. 724-25.

The ALJ rejected Mr. Perez's opinion because his "own treatment notes do not substantiate the degree of severity implicated." Tr. 19. As an initial matter relevant to this point, I note that even Mr. Perez qualified his opinion somewhat in stating that "[t]his is my impression of Ms. Rodriguez after [one] visit with her and in reviewing her mental health history." Tr.

15 - OPINION AND ORDER

723. The ALJ was correct that the few treatment notes from Mr. Perez in the record paint a different picture. On December 14, 2010, one week before the date of his opinion, Mr. Perez noted that plaintiff presented as "psychiatrically stable" with no depressive mood and manageable anxiety level. Tr. 727. Indeed, on that day, plaintiff reported that her depression was "under control." Id. On January 4, 2011, Mr. Perez echoed these findings, again assessing plaintiff as "psychiatrically stable" with manageable anxiety and no depressive mood. Tr. 726. The ALJ cited germane reasons to reject Mr. Perez's opinion.

### IV. Lay Testimony

Plaintiff next asserts that the ALJ erroneously rejected the lay testimony of Sarah Swenson Smith, Alein McMellon, Sherry Hayhurst, and Cassandra Hayhurst. Lay testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account. Molina, 674 F.3d at 1114. To discount lay witness testimony, the ALJ must give reasons that are germane to the witness. Id.

Sherry Hayhurst, plaintiff's mother, submitted a Third Party Function Report that described similar limitations to plaintiff's Function Report, as well as a letter further describing the effects of plaintiff's depression and anxiety. Tr. 157-64, 216. Sarah Swenson Smith, plaintiff's former coworker, submitted a letter describing plaintiff's performance at work in light of her anxiety

16 - OPINION AND ORDER

and depression. Tr. 213-14. Alein McMellon, plaintiff's grandmother, submitted a letter similar to Ms. Hayhurst's describing the effects of plaintiff's anxiety and depression, and the resulting stress on their family. Tr. 215. Finally, plaintiff's daughter submitted a letter describing her mother's difficulties with depression and anxiety, and the challenges it has caused in her family. Tr. 218.

The ALJ partially rejected the lay testimony because the full extent of symptoms described by plaintiff's friends and family were unsupported by the medical record. Indeed, as discussed in detail above, the majority of plaintiff's mental health treatment notes indicate a lesser degree of depression and anxiety than the lay witnesses described. The ALJ could reasonably discount the lay testimony on this basis. The ALJ did not err in his treatment of the lay testimony.

## V. **Sufficiency of the RFC**

Plaintiff finally argues that the ALJ erred in formulating the RFC because it did not include the moderate limitation in concentration, persistence, and pace that the ALJ found at Step Two. See Tr. 15. "An ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." Stubbs-Danielson, 539 F.3d at 1174. Thus, while plaintiff is correct that the ALJ found that

17 - OPINION AND ORDER

she is moderately limited with regard to concentration, persistence, and pace, under <u>Stubbs-Danielson</u> such limitation was adequately incorporated into the RFC if substantial evidence in the medical record demonstrates that the limitation of plaintiff to unskilled work, defined as "routine, repetitive tasks, simple instructions," adequately accounts for the concentration, persistence, and pace limitation.

In her examination, Dr. Stradinger observed that plaintiff "appeared to have some difficulty with concentration, but was able to complete the interview. Her persistence was adequate and her pace was slower than average." Tr. 453. Nonetheless, Dr. Stradinger concluded that plaintiff "appears to be capable cognitively of performing simple and repetitive work-type tasks." Tr. 456. Dr. Hennings came to a similar conclusion, checking that plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, but nonetheless was capable of performing simple tasks. Tr. 459, 472. Thus, the ALJ's finding that plaintiff's concentration, persistence, and pace limitations were accounted for in the RFC by limiting plaintiff to unskilled work, defined as routine, repetitive tasks, and simple instructions, is consistent with restrictions identified in the medical testimony. See <u>Stubbs-Danielson</u>, 539 F.3d at 1174. As such, the RFC was sufficient in this respect.

///

## CONCLUSION

For the foregoing reasons, the decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

DATED this **26** day of August, 2013.

                                            /s/ Malcolm F. Marsh
                                            Malcolm F. Marsh
                                            United States District Judge